FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 2 1 2022

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

Gregory Holt # 129616
(Abdul Maalik Muhammad)
Maximum Security Unit
2501 State Farm Rd.
Tucker, AR 72168

4:22-cv-01132-KGB-JJV

United States District Court
Eastern District of Arkansas
Central Division

This case assigned to District Judge Baker
and to Magistrate Judge Volpe

Gregory Holt # 129616
(Abdul Maalik Muhammad)
            Plaintiff

        vs.

Solomon Graves, Secretary
of the Arkansas Department
of Correction;
            and
Jared Byers, Former Warden,
Maximum Security Unit,
            Defendants

Case No.

Verified Complaint
For Declaratory And
Injunctive Relief

Jury Trial Demanded

## Complaint For Declaratory And Injunctive Relief

Plaintiff, Gregory Holt (Abdul Maalik Muhammad) files this complaint for Declaratory and Injunctive Relief against Arkansas Division of Corrections officials Jared Byers and Solomon Graves, the Secretary of the Arkansas Department of Correction. The Complaint alleges violations of the First Amendment to the United States Constitution under 42 U.S.C. Section 1983.

## Introduction

(1) The right to access the judicial system is a fundamental right an incarcerated person possesses. Without it, incarcerated persons would lose the ability to litigate, enforce rights critical to the conditions of their confinement, and assist others in the vindication of their civil rights.

(2) In Johnson vs. Avery, 393 U.S. 483,

2

1969, the Supreme Court made the same point in advocating for protections around an incarcerated person's access to the courts, including around efforts by incarcerated persons to assist one another in redressing their legal claims.

(3) The Court effectively outlined the protections under which Plaintiff seeks in this action—that is, reasonable access to his legal property such that he can exercise his rights to access the courts and assist others as part of his duties as a jailhouse lawyer.

(4) The Plaintiff, an incarcerated individual held by the Department, has a right to his legal property, to represent himself, and while in custody, have reasonable access to legal materials necessary to facilitate those rights.

3

(5) Indeed, the Plaintiff, who not only is formally trained in the law as a result of attending law school but also working capital and death penalty cases among other types of litigation— acts as a full time 80+/hours/week jailhouse lawyer for not only himself but for dozens of incarcerated individuals under ADC custody;

(6) As a result, he's assisted dozens of other incarcerated persons in researching and writing on legal issues, filing state and federal litigation including 50 federal habeas petitions, and representing themselves in approximately 300-400 civil and criminal cases;

(7) The breadth of legal research and documents accumulated for working on even one of those matters is voluminous,

4

And, as an incarcerated person, merely having access to complete information is difficult. Plaintiff provides more access to documents not available in the institutional law library through his network of attorneys,

(8) During the course of Plaintiff's legal work, he has amassed a significant amount of legal property,

(9) At all times, the Plaintiff has sought to comply with every correctional directive attempting to limit his access to and/or possession of legal property. He has consistently sought accomodations to allow him to maintain legal property consistent with his constitutional rights to the extent those rights conflict with ADC policy,

(10) ADC has failed to properly provide

the Plaintiff with accomodations consistent with his constitutional rights.

(11) ADC over the years has withheld the Plaintiff's legal materials confiscated them, and prevented him from accessing it-often without a valid or constitutional justification - and in violation of his civil rights, (See Tyler vs. Woodson, 597 F.2d 643, 8th Cir. 1979)

(12) ADC has sometimes performed confiscations or withdrawn purported accomodations in retaliation for Plaintiff exercising his constitutional rights, such as petitioning the courts.

(13) Since 2016, ADC has implemented two directives that have particularly impacted the Plaintiff and his access to and possession of his legal property. At their core, these policies fundamentally

6

and unconstitutionally define legal property as regular property by placing a limit on the quantity an incarcerated person can have at any given time. If an incarcerated person is deemed to have excess property, they are subject to disciplinary action. If they choose, they can store excess property that can be swapped out from the facility's property room - but since 2016 that has not been a successful or workable solution.

(14) Plaintiff previously filed suit in the Eastern District of Arkansas regarding this issue, and through his then-counsel, voluntarily dismissed the action to properly exhaust his remedies under ADC's recent policy changes. (See Holt vs. Kelley, Case No. 5:18-CV-00264-KGB,

7

U.S.D.C, E.D.Ark, dismissed w/o prejudice 10-15-20) Plaintiff attempted to reopen the case, but it was determined to be untimely pursuant to the Arkansas Savings Statute. He exhausted his remedies as to the instant complaint.

(15) ADC's attempts to control Plaintiff's legal property are both unrealistic and unreasonable. Such efforts to implement unclear requirements that specifically impact his rights have proven time and again as ineffective and unconstitutional.

(16) The inability to access his legal files at one time has caused Plaintiff interference. He has not been able to as effectively litigate or help others to do so like he did before. Even as recently as November 15, 2022, Plaintiff was advised at a classification hearing by Deputy Warden

Maurice Culclager that he had "until the end of the month" or November 30 to get the excess legal property out of his cell. Though not specifically stated, Plaintiff was left with the 'impression that should he not comply, he would be subjected to confiscation of his legal property and disciplinary sanctions. This is the same actions that Defendant Byers engaged in back in 2020 that is the subject of the instant complaint and these actions are ones that Plaintiff seeks to enjoin.

## I. Jurisdiction and Venue

(17) This is an action for declaratory and injunctive relief arising under the First Amendment to the U.S. Constitution and 42 U.S.C. Section 1983.

9

(18) This Court has federal question jurisdiction over Plaintiff's claims of violations of the U.S. Constitution under 28 U.S.C. Section 1331 and 42 U.S.C. Section 1983.

(19) Plaintiff's claims for declaratory and injunctive relief are sought under 28 U.S.C. Sections 2201 and 2202, 28 U.S.C. Section 1343, Rules 57 and 65 of the Federal Rules of Civil Procedure and the general legal and equitable powers of this Court.

(20) This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Arkansas. The Arkansas Division of Correction's Maximum Security Unit is an "institution" within the meaning of 42 U.S.C. Section 1997.

(21) Venue is proper under 42 U.S.C.

10

Section 1997.

(22) Venue is proper under 42 U.S.C. Section 1391 because Defendant operates within the geographical boundaries of the State of Arkansas and a substantial part of the acts described herein occurred within this district.

## II. Plaintiff

(23) Plaintiff Gregory Holt a.k.a. Abdul Maalik Muhammad is and was at all times mentioned herein a prisoner incarcerated in the Arkansas Division of Correction. He is currently housed at the Maximum Security Unit in Tucker, Arkansas.

## III. Defendants

(24) Defendant Solomon Graves is the Secretary of the Arkansas Department

11

of Correction. Defendant Graves is the ultimate decision-maker and authority figure over all ADC policies, procedures, and operations, including those around an incarcerated persons property. Defendant Graves is being sued in his official capacity only.

(25) Defendant Jared Byers is the former warden of the Maximum Security Unit. Defendant Byers was a decision-maker with the authority to implement ADC policies and procedures including those surrounding an incarcerated persons property. He also had the authority to create and implement unit policy, including policy surrounding an incarcerated person's property. Defendant Byers is being sued in his official capacity only.

## IV. Exhaustion Of Legal Remedies

(26) Plaintiff has exhausted all remedies as to all parties and issues.

## V. Facts

(27) On July 9, 2020, then-warden Jared Byers sent Plaintiff a memorandum directing him to get the legal property in his cell in compliance by July 16, 2020, or else face confiscation and disciplinary action. (Exhibit 1)

(28) Plaintiff contacted counsel, who in turn, contacted Christine Cryer of the Secretary's Office attempting to stave off the taking of the property. After a conversation with Ms. Cryer, Defendant Byers sent Plaintiff an amended memorandum that gave him until July 20, 2020, to bring the property into compliance. (Exhibit 2)

(29) Plaintiff filed multiple grievances challenging the memorandum and the taking of the property, (See Grievance No. MX-20-01463, filed July 31, 2020; MX-20-01464, filed July 31, 2020; MX-20-01305, filed July 2, 2020; MX-20-01312, filed July 4, 2020) He alleged that the taking of the property was illegal due to the fact that the policy did not prohibit the possession of more than 1 property bag.

(30) In accordance with ADC's July 16 memorandum, officers removed 4 bags of legal property from Plaintiff's cell. It was stored in a closet where it remains today.

(31) As a result of the filed grievances being taken all the way to Central Office, and decided on their merits,

Plaintiff has exhausted his administrative remedies.

(32) Now, MSU staff are once again threatening to deprive the Plaintiff of his legal property the week of December 1, 2022.

## VI. Legal Claims

(33) Plaintiff realleges and reincorporates by reference Paragraphs 1-32 as if argued here.

(34) Plaintiff's First Amendment rights to free speech and association were violated when his property was seized in 2020. Any taking of the property at this juncture would constitute an additional violation.

(35) There is no question that Plaintiff

15

has the right to assist his fellow prisoners with their legal work, within reasonable restrictions. (See <u>Johnson vs. Avery</u>, 393 U.S. 483, 1969; accord <u>Bear vs. Kautzky</u>, 305 F.3d 802, 8th Cir. 2002) To do so, he needs the proper tools so that he can provide competent assistance. <u>FN1</u>

(36) Plaintiff has standing to assert the rights of his fellow inmates as well as his own. (See <u>Munz vs. Nix</u>, 908 F.2d 267, 8th Cir. 1990) Such standing necessarily implicates First Amendment rights of free speech and expression, especially if the "litigation is undertaken in good faith

<u>FN1</u>—The ADC currently does not provide assistance to prisoners "from those trained in the law" such as certified paralegals, contract attorneys, or law librarians. The "clerks" who work in the institutional law library are not trained and their main job is to print out requested case cites and provide pre-printed legal forms. The ADC Attorney For Inmates' role is limited to divorce and name change petitions.

16

by a prisoner motivated to bring about social change and protect constitutional rights in the prison." (See Adams vs. James, 784 F.2d 1077, 11th Cir. 1986) This has been recognized as a "form of political expression" and "political association" (See e.g. Smith vs. Maschner, 899 F.2d 940, 10th Cir. 1990) Plaintiff is known for his efforts to bring about social change in the prison system.

(37) The ADC property policy as currently constituted interferes with Plaintiff's First Amendment rights of free speech and expression as well as association by imposing disciplinary sanctions against him for possessing large amounts of legal work that are needed in order to litigate.

(38) Plaintiff has been subjected to those sanctions before on at least 3 different occasions for failing to part voluntarily with his legal property. He

17

faces sanctions again the week of December 1, 2022, should he not comply.

(39) Such threats of sanctions have a propensity to chill First Amendment speech; therefore, the property policy is unconstitutional as applied to him. Plaintiff seeks injunctive relief in order to enjoin the Defendants from enforcing the policy until such time as the court enters final judgment in the case. More importantly, Plaintiff seeks to enjoin the ADC from taking his legal property after December 1, 2022.

(40) Plaintiff will suffer an actual injury and has already suffered one as a result of the unconstitutional application of the property policy as applied to him. Plaintiff seeks injunctive relief. To seek such relief, Plaintiff must show that:

18

he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

(See Miller vs. Thurston, 967 F.3d 734, 8th Cir. 2020)(quoting Summers vs. Earth Island Inst., 555 U.S. 488, 2009)

(41) The injury-in-fact component requires "a plaintiff to show that he or she suffered 'an invasion of a legally protected interest.'" (See Spokeo, Inc. vs. Robins, 136 S.Ct. 1540, 2016) (quoting Lujan vs. Defenders of Wildlife, 504 U.S. 555, 1992)

(42) Plaintiff addresses each of these

19

factors in turn. Plaintiff is under threat of suffering 'injury in fact' due to the fact that as of December 1, 2022, staff will be instructed to seize his legal property from his cell and he would be sanctioned with disciplinary action. That property would then be stored in an institutional storage closet, just like the property that was seized in 2020. The sanctions can include loss of class, loss of privileges, loss of job, and placement in isolation. The injury is "concrete and particularized."

(43) The threat is actual and imminent in that the MSU staff are instructed to come seize Plaintiff's legal property the week of December 1, 2022. It is not conjectural if this will occur or not.

(44) The injury is fairly traceable to the challenged action of the defendant

20

based on the foregoing, The taking of the legal property and the sanctions imposed are fairly traceable to each other.

(45) Finally, a favorable judicial decision will prevent or redress the injury. Should this Court enter preliminary injunctive relief, which Plaintiff will ask for under separate pleadings, the taking of his legal property the week of December 1, 2022 will be stayed. The status quo would be maintained until such time as the Court enters a final order in the case. Plaintiff would not be subjected to any type of sanctions during this time period.

(46) Injunctive relief is appropriate because the ADC property policy as currently constituted chills Plaintiff's First Amendment speech and associational

21

rights.

(47) Defendant Graves' failure to supervise his subordinates so that Plaintiff would not be harmed in the retention and use of his legal materials is precisely the reason why those materials were seized by Defendant Byers. Defendant Graves was well aware of the ongoing issue surrounding the property situation, yet he took no action to alleviate the problem. Defendant Graves was recently advised yet again about the legal materials, but it appears that he has not cautioned MSU staff about interference with them.

(48) Defendant Byers knew, or reasonably should have known, that taking Plaintiff's legal property was illegal and unconstitutional yet he did so anyway. He knew this because

22

In November of 2020, Warden Byers amended the Maximum Security Unit policy regarding inmate property to reflect that an inmate may "retain such legal materials as are necessary for pursuing litigation and preparation of appeals." (MS 9. 27.0 (VI)(F)) [Exhibit 3] In that same policy, it indicates that those materials must fit into the property box provided.

(49) There are no property boxes provided to the Plaintiff. Those were removed in 2018. Instead, property bags were provided and neither the unit policy nor the ADC policy on inmate property- AD 2021-08- forbids more than 1 property bag.

(50) By continuing to allow his subordinates to threaten Plaintiff with disciplinary action for possessing the legal property that he does, Defendant Graves has

23

become the cause in fact of the taking of his legal materials and the continued storage of them in the institutional storage closet, where Plaintiff does not have ready access to them. Defendant Graves also is the cause of the deputy warden at the MSU feeling emboldened to threaten the Plaintiff with seizure of his legal materials the week of December 1, 2022.

(51) The taking of his legal materials in 2020 and the threat to do so in December deprives Plaintiff of his right to unobstructed and clear access to the courts and denies him his First Amendment rights to speech and association guaranteed by the Constitution of the United States.

(52) With the foregoing in mind, Plaintiff is filing in conjunction with this

complaint an Application For A Preliminary Injunction, Plaintiff seeks to enjoin and restrain the Defendants from seizing or ordering seized the legal property that he currently has in his cell while this complaint is pending, especially the week of December 1, 2022.

(53) Injunctive relief is appropriate.

## Count 1- Willful and Wanton

(54) Plaintiff realleges and reincorporates by reference herein paragraphs 1-52 as if argued here.

(55) Defendant Graves maintained, and continues to maintain, a course of action by not instructing his subordinates to allow Plaintiff the right to possess and enjoy his legal property without interference. This course of action demonstrated a deliberate intention to harm the Plaintiff

by separating him from the documents
needed to effectively litigate claims
involving himself and others. Defendant
Byers is guilty of the same thing. It
also constituted a conscious disregard
for Plaintiff's First Amendment rights of
speech, expression, and association.

(56) Plaintiff is entitled to declaratory
and injunctive relief for the willful and
wanton conduct of the Defendants.

## Count II - State Law Claim
## Tort Of Conversion

(57) Plaintiff realleges and reincorporates
by reference herein paragraphs 1-56 as if
argued here.

(58) In Arkansas, conversion is a common
law tort action for wrongful possession
or disposition of another's property. (See
McQuillan vs. Mercedes-Benz Credit Corp.,

961 S.W. 2d 729, 1998) In order to establish liability for conversion, a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owner's rights. (Id.)

(59) To be sufficient, the complaint must state that the plaintiff had a property interest in the subject goods and that the defendant wrongfully converted them. (See Big A Warehouse Distribs, vs. Rye Auto Supply, 719 S.W. 2d 716, 1986) The property interest may be shown by a possession or a present right to possession when defendant cannot show a better right. (Id.)

(60) Defendants wrongfully converted Plaintiff's legal property due to the

fact that he had a present right to possession of the documents to litigate state and federal claims on behalf of himself and others. Defendants have not and cannot show a better right to the legal materials, the current property policy notwithstanding. Indeed, the General Assembly did not grant the Department a special dispensation to take a prisoner's legal property, statutorily or otherwise.

(61) As a result of the above-described wrongful conversion of Plaintiff's legal materials, Plaintiff lost possession of them when he had a superior right or property interest in them and lost the immediate use of them in the cases he was working including access to documents not available in the institutional law library.

## Count III - Violation Of The First Amendment's Petition Clause

(62) Plaintiff hereby realleges and reincorporates by reference the foregoing paragraphs 1-61 as if fully set forth herein.

(63) The First Amendment's Petition Clause guarantees prisoners access to legal materials about their own case.

(64) The Petition Clause likewise grants prisoners access to jailhouse lawyers, and as a result requires jailhouse lawyers to have access to legal materials about the fellow incarcerated persons they represent.

(65) The jailhouse lawyer has standing to bring claims regarding both forms of access to legal materials.

(66) The Eighth Circuit has confirmed that "the taking of a prisoner's legal papers states a claim under 42 U.S.C. Section 1983 or 1985 if the taking results in interference with or infringement of the prisoner's constitutional right of access to the courts."

29

(See Tyler vs. Woodson, 597 F.2d 643, 8th Cir. 1979; see generally Silva vs. Di Vittorio, 658 F.3d 1090, 9th Cir. 2011)

(67) Because interference is assumed whenever a prison takes an incarcerated individual's papers, (see Goff vs. Nix, 113 F.3d 887, 8th Cir. 1997), the "withholding of inmates' legal papers burdens a constitutional right and can only be justified if it is reasonably related to a legitimate penological interest." (Id.)

(68) As a result of the Defendants' unconstitutional actions, the Plaintiff has suffered harm due to the interference the policy has caused both in preparing for his cases as well as in his assisting with other incarcerated persons as a jailhouse lawyer.

(69) Absent an injunction, the Plaintiff will continue to suffer harm as described above.

(70) Plaintiff is entitled to declaratory and

injunctive relief.

## VII. Jury Demand

(71) Plaintiff seeks a jury trial on all issues triable by jury.

## Prayer For Relief

Wherefore, Plaintiff requests this Court enter judgment in his favor and against the Defendants on each count in this Complaint, and issue an order awarding the following relief:

(1) A declaratory judgment that:

(a) ADC's policies, practices, and customs including the Department's directives against Plaintiff and his legal property, violate the First Amendment to the U.S. Constitution and 42 U.S.C. Section 1983; and,

(b) ADC's taking of the Plaintiff's

legal property and their failure to provide him with reasonable access is not justified by a compelling penological interest.

(2) An Emergency Preliminary Injunction that:

(a) Forbids any Maximum Security Unit employee from seizing Plaintiff's legal property the week of December 1, 2022 and that further forbids MSU personnel from removing any legal property from his cell during the pendency of this case.

(3) A permanent injunction that:

(a) Requires ADC to define and distinguish legal property from ordinary prisoner property in its policies, procedures, and customs;

(b) Requires ADC to implement new policies, procedures, and

32

customs on how correctional
staff treat prisoner legal property,
including a process on how
prisoners can reasonably request,
access, and possess their legal
property in accordance with the
U.S. Constitution and prison safety
and security interests; and,

(c) Requires ADC to designate a warden
and/or assistant warden responsible
for rescinding the old prisoner-
related property procedures and
administering the changes
sought after in this action,
including the subsequent
implementation of constitutional
legal property policies, customs,
and practices;

(4) Such other and further relief as the
Court may deem proper.

Respectfully submitted,

Gregory Holt

Gregory Holt #129616
(Abdul Maalik Muhammad)
Maximum Security Unit
2501 State Farm Rd,
Tucker, AR 72168

33

## <u>Verification</u>

I verify that the foregoing is true and correct to the best of my knowledge, except as to matters based upon information and belief, and as to those I believe them to be true under penalty of perjury.

Signed: Gregory Holt
Date: 11-17-22
Executed at: Tucker, Arkansas

RECEIVED
US DISTRICT COURT
EASTERN DISTRICT ARKANSAS

2022 NOV 21 A 10: 18

TAMMY H. DOWNS

Gregory Holt #129616
(Abdul Maalik Muhammad)
Maximum Security Unit
2501 State Farm Rd,
Tucker, AR 72168

Date: Rabi Al-Akhar, 1444 A.H./11-17-22 C.E.

United States District Court Clerk
600 W. Capitol Room A-149
Little Rock, AR 72201

To Whom It May Concern:
    Please find enclosed 2 documents for filing:
a verified complaint and an emergency application
for preliminary injunction.
    The preliminary injunction request is the
purpose of this letter. I was advised on November
15 at a classification hearing that I had until
the end of the month, or November 30, to remove
"excess" legal property from my cell or they would
"come around December 1" which only means one
thing: wholesale seizure of the property and
disciplinary action. As a result of this, I have
asked the court as part of the request for a
preliminary injunction to forbid the taking of
the property.
    I am asking that the complaint and

injunction request be expedited so that whichever judge is assigned may have time to act on my request,

Any help that you can offer is greatly appreciated,

I do remain,

Gregory Holt

Gregory Holt # 139616

(Abdul Maalik Muhammad)

Gregory Holt #129616
(Abdul Maalik Muhammad)
Maximum Security Unit
2501 State Farm Rd,
Tucker, AR 72168

Legal Mail

MAXIMUM
SECURITY
UNIT

NEOPOST
11/18/2022
US POSTAGE $003.84º

FIRST-CLASS MAIL

ZIP 72168
041M11298844

United States District Court Clerk
600 W. Capitol Room A-149
Little Rock, AR 72201

Legal Mail

LEGAL MAIL