**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**GREGORY HOLT, ADC # 129616**
***also known as Abdul Maalik Muhammad*** **PLAINTIFF**

**v.** **Case No. 4:22-cv-01132-KGB**

**JOE PROFIRI, *et al.*** **DEFENDANTS**

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**

Before the Court is an application for a temporary restraining order or, in the alternative, a preliminary injunction filed by plaintiff Gregory Holt, also known as Abdul Maalik Muhammad[1] (Dkt. No. 29). Defendants Joe Profiri, in his official capacity as Secretary of the Arkansas Department of Corrections, and James Shipman, as Warden of the Tucker Maximum-Security Unit ("MSU") of the Arkansas Division of Corrections ("ADC"), (collectively "defendants") filed a response to Mr. Holt's application for a temporary restraining order or, in the alternative, a preliminary injunction (Dkt. No. 35). Mr. Holt filed a reply memorandum in support of his application (Dkt. No. 46).

The Court conducted a hearing with all parties on the application on December 1, 2023 (Dkt. Nos. 55–57). At the hearing, counsel for Mr. Holt orally moved to withdraw Mr. Holt's pending motion to re-urge application for preliminary injunction (Dkt. No. 21). Defendants did not object to Mr. Holt's motion to withdraw his motion, and the Court granted the motion in open court. The Clerk is directed to withdraw Mr. Holt's motion to re-urge application for preliminary injunction and to vacate United States Magistrate Judge Joe J. Volpe's Proposed Findings and

---

[1] The Court understands from the hearing on this matter that Mr. Holt prefers to be called Mr. Muhammad. However, because plaintiff is named as "Gregory Holt" on the docket and because the Court would like to maintain consistency in the record, the Court will continue to refer to plaintiff as Mr. Holt in the Court's Orders.

Recommendations related to the motion (Dkt. Nos. 21; 23). Further, at the hearing, all parties agreed that this Court will consider only Mr. Holt's request for a temporary restraining order at this stage of the proceeding.

For the following reasons, the Court denies plaintiff's motion for temporary restraining order.

## I. Background

Mr. Holt, an inmate in the MSU of the ADC, filed an amended complaint in this case, which is the operative complaint, as well as a motion for emergency preliminary injunction (Dkt. Nos. 3; 10). In the operative complaint, Mr. Holt states that the ADC's property policy as written, Administrative Directive 20-08 ("the Policy"),[2] which was approved and enforced by former ADC Secretary Solomon Graves and former Warden Jared Byers,[3] was being interpreted at the time the operative complaint was filed to mean that inmates can only keep one bag of personal property, including legal materials, in their cells and that the rest of their property must be stored in storage (Dkt. No. 10, at 54-55). Mr. Holt states in his operative complaint that, under the Policy, inmates may, in theory, request access to a stored property bag and swap it out with the property bag in their cell; he observes that property boxes were removed in 2018 and replaced "by property bags measuring 30 x 16 inches" (Dkt. No. 10, at 32-39). Mr. Holt complains that the process to request a stored property bag and swap it out with the property bag in the cell is slow, not "workable," understaffed, under sourced, and has prevented him from effectively representing himself and

[2] MSU Policy 9.27.0, referenced by the parties in their briefing on the temporary restraining order, references AD 20-08 (Dkt. No. 35-13, at 9, Ex. A-12).

[3] The Clerk of the Court has updated the docket sheet to reflect that James Shipman has replaced Jared Byers as the Warden of the Tucker Unit. *See* Fed. R. Civ. P. 25(d).

numerous prisoners seeking his assistance as a jailhouse lawyer (*Id.*).[4] According to Mr. Holt, defendants violated his constitutional rights to access the courts and to be a jailhouse lawyer, as well as his First Amendment rights of free speech and association (*Id.*, at 65-70). Additionally, Mr. Holt brings claims under Arkansas law (*Id.*, at 58-65). Mr. Holt sues defendants in their official capacities only (*Id.*, at 2).

In a September 25, 2023, Order, the Court adopted in part the Recommended Disposition ("Recommendation") of Judge Volpe and dismissed without prejudice Mr. Holt's claim that the Policy violated his right of access to the courts to bring claims on his own behalf (Dkt. No. 17, at 12). The Court declined to adopt Judge Volpe's Recommendation with respect to Mr. Holt's claims that the Policy violated Mr. Holt's constitutional rights to assist other prisoners in litigation and his First Amendment rights of free speech and association (*Id.*, at 13). The Court found that Mr. Holt could pursue his jailhouse lawyer and First Amendment rights of free speech and association claims (*Id.*). The Court also declined to dismiss Mr. Holt's state law claims (*Id.*). The Court referred the case back to Judge Volpe for further proceedings consistent with the terms of the Order and for a ruling on Mr. Holt's pending motion for emergency preliminary injunction and for expedited ruling (*Id.*). Mr. Holt filed his motion to re-urge application for preliminary injunction, which he moved to withdraw at the hearing on the motion for temporary restraining order, and the Court granted his motion to withdraw without objection from defendants as set forth above (Dkt. No. 21).

---

[4] Mr. Holt attaches several documents to the operative complaint relating to his complaints about the ADC's property policy from 2017 and 2018 (Dkt. No. 10, at 97-107, 144-45). Judge Volpe concludes that, to the extent Mr. Holt seeks to raise claims in the operative complaint arising prior to November 21, 2019, these claims are barred by the three-year statute of limitations (Dkt. No. 11, at 2, n.2). *See Spradling v. Hastings*, 912 F.3d 1114, 1119 (8th Cir. 2019); *Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001). This Court agrees with Judge Volpe's analysis on this point.

Counsel entered an appearance for Mr. Holt and filed Mr. Holt's current application for a temporary restraining order, or in the alternative, a preliminary injunction (Dkt. Nos. 28; 29). The motion seeks an order "requiring the Arkansas Department of Correction [] to cease its ongoing review of legal paperwork including documents protected by the attorney-client privilege and attorney work product doctrine ('Legal Materials') seized from Plaintiff's cell by the ADC on November 16, 2023." (Dkt. No. 29, ¶ 2). Mr. Holt states that his motion is "narrowly targeted to seek relief only as to Mr. Holt's privileged correspondence, Mr. Holt's work product, and the records of Mr. Holt's Legal Material related to his *active personal cases*." (Dkt. No. 46, at 2) (emphasis added).

At the hearing, Mr. Holt requested that the Court grant him the following relief:

1. enjoin the ADC from reviewing all legal materials seized from Mr. Holt on Thursday, November 16, 2023;
2. require the seized materials not yet returned to Mr. Holt to be placed outside of Deputy Warden Culclager's office or conference room where they are not accessible to ADC officers who are adverse to Mr. Holt;
3. permit Mr. Holt or, if necessary independent attorneys or counsel for Mr. Holt, to conduct resorting of documents that MSU staff determined were files of other prisoners so that Mr. Holt may retain his own legal correspondence, work product, and files; and
4. permit Mr. Holt to retain his own legal correspondence, work product, and files, including, but not limited to, research, pleadings, sample briefs, law review articles, and drafts.

## II. Findings Of Fact

The Court has considered the entire evidentiary record presented by the parties in reaching its decision, although citing only specific portions in this Order. The Court makes the following specific findings of fact.

1. MSU Policy MS 9.27.0 (hereinafter "the Inmate Property Control Policy") is the current unit Inmate Property Control Policy at the MSU (Dkt. No. 35-13, Ex. A-12).

2. The Inmate Property Control Policy defines contraband as follows:

> **Contraband**: Any article not authorized or issued to an inmate as personal or state property or purchased by the inmate through the Unit Commissary.
>
> Also included is nuisance contraband:
>
> 1. Nuisance Contraband: Any item or article which may be or may have been authorized for possession, but which is now prohibited because excessive quantities present health or fire hazards or have become a housekeeping problem. Specific examples include but are not limited to:
>
> (a.) Excessive numbers of newspapers, letters, or magazines.
>
> (b.) Food items which have spoiled.
>
> (c.) Items accumulated for the purpose of barter or trade.
>
> 2. Other Types of Contraband: Any articles in excess of established Unit/Center limits, articles used for unauthorized purposes, and/or articles in an inmate's possession while in an unauthorized area are also considered contraband.

(Dkt. No. 35-13, at 1, Ex. A-12).

3. The Inmate Property Control Policy defines "personal property" as "items on an inmate's person or living area which are purchased by or for an inmate and/or given to an inmate which are authorized to be retained as set forth by this policy." (Dkt. No. 35-13, at 1, Ex. A-12). The Inmate Property Control Policy further states regarding "Excessive and Unauthorized Property/Contraband" that "if, after periodic inspections and shakedowns, the Warden or his

designee determines that an excessive amount of personal property has been accumulated by an inmate, the inmate will be advised that he must dispose of the excessive property according to the policy set forth herein." (Dkt. No. 35-13, at 3, Ex. A-12). The Inmate Property Control Policy also describes the limits of "Legal Materials" an inmate may possess as follows:

> 1. An inmate may retain such legal materials as are necessary for pursuing litigation and preparation of appeals provided the quantity of those materials can be stored in the property box provided.
>
> 2. Articles not related to active litigation or appeals may be stored for a maximum of forty five (45) days. The inmate is responsible for the disposal of those materials through visitation or the U.S. Mail at the inmate's expense.
>
> 3. Inmates may access stored legal materials by utilizing the inmate request system.
>
> 4. At the time of transfer the UPCO shall inquire of the inmate being transferred whether that inmate has legal work belonging to any other inmate. If so, those legal materials must be returned to that inmate.

(Dkt. No. 35-13, at 5, Ex. A-12).

4. Section H of the Inmate Property Control Policy states, "all personal property must be kept inside the Property Box that is issued to the inmate. The only exception will be shoes/shower shoes. Every means will be utilized to reduce storage of items as much as possible. Excessive amounts of property will be taken as contraband per AR 401." (Dkt. No. 35-13, at 6, Ex. A-12).

5. AR 401 defines "contraband" as "any article not authorized nor issued to an offender as personal or state property, nor purchased through the facility commissary specifically defined as contraband including any excessive, authorized personal property whether seized during a residential, vehicle, or body search." Code Ark. R. 004.03.1-401. Further, AR 401 states, "[a]ll contraband discovered during a search or otherwise is to be confiscated, recorded pursuant to the

appropriate administrative directive and reported to a supervisory officer. The supervisory officer should investigate to determine exactly where the contraband came from and how it was introduced." *Id*.

6. AR 401 is clear that "authorized offender personal property in living quarters which constitutes a significant safety concern, seriously impairs reasonable visual observation or impedes reasonable search or exceeds maximum number of allowed items by policy shall be considered contraband." *Id*. All contraband is to be safeguarded until it is no longer needed as evidence and then disposed of in accordance with policy. *Id*.

7. On November 16, 2023, there was a unit-wide shake down at the MSU, and ADC officials seized materials from Mr. Holt's cell (hereinafter "the seized materials") after finding other inmate property on Mr. Holt's table.

8. On November 16 and 17, 2023, ADC officials sorted through the seized materials outside of Mr. Holt's presence.

9. ADC officials completed a Form F-401 ("the Form") (Dkt. No. 35-5, Ex. A-4). The Form reflects that, according to ADC officials, Mr. Holt had a total of 104 other inmates' property in his cell (Dkt. No. 35-5, Ex. A-4).

10. The seized materials included, but were not limited to, Mr. Holt's case files and correspondence with counsel on active cases including *Holt v. Payne*, Case No. 4:22-cv-533-JM-PSH (E.D. Ark.), and *Holt v. Kelley*, Case No. 5:19-cv-81-BSM-JTK (E.D. Ark), pending before this Court. Both cases name ADC staff at the MSU as defendants.

11. The seized materials also included Mr. Holt's case files, legal research, and draft work product related to another matter pending before this Court, *Holt v. Department of Justice*, Case No. 4:22-cv-605-KGB (E.D. Ark.), in which Mr. Holt is proceeding *pro se*.

12. The seized materials also included Mr. Holt's case files from other inmates and Mr. Holt's corresponding research and writing in support of those inmates.

13. The Form that ADC officials provided Mr. Holt when his property was seized provides that the disposition of the contraband was to be "stored until sent out by inmate." (Dkt. No. 35-5, Ex. A-4).

14. The materials seized from Mr. Holt's cell were not stored but instead were taken to Deputy Warden Culclager's office or a conference room at the MSU.

15. Mr. Holt has two years of law school training.

16. Inmates at the MSU seek Mr. Holt out and ask him for help with their legal work because they are aware that he has legal training.

17. When other inmates ask Mr. Holt for help, he asks them to see their case file. When inmates who ask Mr. Holt for legal help do not have their case file, Mr. Holt requests it.

18. Inmates who request Mr. Holt's assistance with their legal problems consent to him having their case files.

19. After Mr. Holt reads another inmate's entire case file, Mr. Holt begins drafting that inmate's petition.

20. Mr. Holt assists other prisoners with federal habeas petitions, civil rights cases under 42 U.S.C. § 1983, state claims commission cases, and appeals of inmate disciplinary convictions.

21. Mr. Holt requires physical paper for all grievances, court transcripts, service copies from opposing counsel, discovery pleadings, legal research, notes, draft pleadings, and court filings.

22. Mr. Holt's largest paper file in the seized materials is *Holt v. Department of Justice*, 4:22-cv-00605-KGB (E.D. Ark). Mr. Holt represents himself in the case. Mr. Holt's paper file for the case is waist high.

23. Mr. Holt recently received a 160-page filing in *Holt v. Department of Justice* from the United States Attorney's Office, and at the time of the hearing he had a response due to the motion for summary judgment on December 21, 2023. Mr. Holt anticipates his response will be 50 to 60 pages in length.

24. Prior to ADC officials seizing materials from his cell, Mr. Holt's recent legal papers were organized underneath his table oldest to newest.

25. In 2018, Mr. Holt was allowed to maintain six property bags of legal property. ADC officials permitted Mr. Holt to maintain six property bags of legal property for two years.

26. In July 2020, Warden Myers told Mr. Holt that he had to downsize and get his legal property down to one property bag. Mr. Holt's excess legal property went into a storage closet in six barracks.

27. The ADC property policy and the Inmate Property Control Policy mention a property box, not a property bag.

28. A property box is a plastic storage container. Approximately three property bags would fit into a property box, according to Mr. Holt. Mr. Holt does not currently have any property boxes in his cell. Mr. Holt currently has two property bags in his cell.

29. Despite requests, Mr. Holt has been unable to access the property taken to storage in six barracks.

30. Mr. Holt has tried for over four years to send out stored legal property, and ADC officials have refused to mail it out.

31. Mr. Holt proposes that he be allowed to keep his own active case files in his cell under his table as the files were prior to November 16, 2023.

32. If Mr. Holt had six property bags, as he had under previous ADC staff, he would be able to store his papers – the seized materials and what he currently has in his cell.

33. Mr. Holt is not opposed to a swap out system for legal materials that works.

34. Mr. Holt proposes another option for a swap out system for legal materials, which would be to place legal property in a two barracks storage closet. Mr. Holt requests that he be able to swap out legal papers in the two barracks storage closet at least once per week.

35. After Mr. Holt's materials were seized on November 16, 2023, Mr. Holt was allowed to go swap out some legal materials for other legal materials in Deputy Warden Culclager's office.

36. The seized materials included Mr. Holt's research and notes for three additional cases Mr. Holt intended to file on his own behalf but had not yet filed.

37. The seized materials included drafts and notes of legal work that Mr. Holt had prepared.

38. The seized materials also contained communications Mr. Holt had received from counsel and that were marked "attorney client communication," as well as materials received from counsel who were representing Mr. Holt in ongoing litigation matters.

39. On November 16, 2023, the day that Mr. Holt's materials were seized, ADC staff began sorting Mr. Holt's materials.

40. Deputy Warden Culclager told Mr. Holt on November 17, 2023, that ADC staff were not reading his legal mail but that ADC staff were sorting it out to separate it into three piles: active, inactive, and cases they had not determined whether they were active or not. ADC staff

scanned but did not read the seized materials. ADC staff were going through and making a judgment about what property belongs to another inmate.

41. ADC staff needed to sort through the seized materials because Mr. Holt had what ADC staff considered other inmate's property and that would be considered contraband.

42. Deputy Warden Culclager was not present the entire time that ADC staff were sorting through the seized materials.

43. When ADC staff were going through the seized materials, they would call Deputy Warden Culclager and show him other inmates' property.

44. Deputy Warden Culclager did not seek further guidance from anybody else at the ADC about what to do with the seized materials.

45. Deputy Warden Culclager would have given documents back to other inmates prior to the hearing, but he received a call that he had to come to Court and decided that he should retain all of the seized materials.

46. According to Deputy Warden Culclager, Mr. Holt is allowed to be a jailhouse lawyer throughout Mr. Holt's barracks but not to inmates from other barracks.

47. According to Deputy Warden Culclager, inmates are not allowed to have other inmates' property.

48. On November 17, 2023, Deputy Warden Culclager permitted Mr. Holt to retrieve anything from his seized property that he needed to pursue his own active cases.

49. Mr. Holt was able to retrieve additional documents related to his own active cases on November 29, 2023.

50. According to Deputy Warden Culclager, Mr. Holt's cell was not in compliance with the Inmate Property Control Policy on the day of the hearing.

51. On November 17, 2023, counsel for Mr. Holt informed counsel for the ADC that the seized materials being sorted contained attorney-client privileged correspondence and demanded that the ADC's review of Mr. Holt's papers "must cease immediately." (Dkt. No. 30, ¶ 6).

52. Counsel for the ADC responded by contending that ADC officials were not "reading anything subject to attorney-client privilege," but were instead "sorting" the legal paperwork seized from Mr. Holt to remove papers pertaining to his inactive cases and those belonging to other inmates (*Id.*, ¶ 7).

53. When counsel for Mr. Holt responded that "it is not possible – without reading Holt's Legal Materials – for [Deputy] Warden [Maurice] Culclager and ADC staff to ascertain what is 'the property of other inmates' versus Holt's 'ongoing active cases' versus Holt's inactive cases," ADC counsel responded that "ADC personnel will not stop sorting the contraband found in Mr. Holt's cell." (*Id.*, ¶¶ 8-9).

54. In the course of sorting the seized materials from Mr. Holt's cell, ADC officials found a note that they allege shows that Mr. Holt charged an inmate $50.00 up front to prepare two claims to be filed with the Arkansas State Claims Commission (Dkt. No. 35-8, at 1, Ex. A-7). Deputy Warden Culclager concluded that Mr. Holt is bartering or trading legal services for commissary purchases because Mr. Holt does not have any funds in his inmate account, but he does have items purchased from the commissary in his cell (Dkt. Nos. 35-9; 35-1, ¶ 9, A-8).

55. Inmates are allowed to possess personal property including legal materials (Dkt. No. 35-1, ¶ 15). Inmates are allowed to "retain such legal materials as are necessary for pursuing litigation and preparation of appeals provided the quantity of those materials can be stored in the property box provided." (Dkt. No. 35-15, at 5, Ex. A-12). According to Deputy Warden Culclager,

the ADC provides each inmate with a property bag which is considered the inmate's property box (Dkt. No. 35-1, ¶ 15).

56. Mr. Holt has still been unable to access a portion of seized materials from this case from when he was proceeding *pro se*, a large file related to a Freedom of Information Act case in this Court in which he is proceeding *pro se* and in which he has an opposition to a summary judgment motion due, a draft 15-page *pro se* complaint stemming from a recently exhausted grievance against Deputy Warden Culclager, correspondence with counsel in three separate religious accommodation matters, and five draft habeas petitions on which Mr. Holt was preparing to assist fellow prisoners.

57. The seized property remains in the possession of ADC officials and subject to review by ADC officials.

58. Based on Deputy Warden Culclager's assessment that cases and briefs captioned with other persons' names or originating from outside the State of Arkansas cannot relate to Mr. Holt's own active matters, he directed ADC officers sorting the seized materials to set any such document aside to be returned to the other inmate or destroyed.

59. Since the shake down at the MSU on November 16, 2023, Mr. Holt has not been allowed to review from the seized materials the legal materials that ADC officials deemed belonged to other inmates.

60. The legal materials deemed to belong to other inmates will be returned to the inmate to whom the property belongs.

61. Eventually, the remaining seized materials will be disposed of pursuant to ADC policy: Mr. Holt can have someone come pick it up, Mr. Holt can mail it out, or Mr. Holt can agree that it be destroyed (Dkt. No. 35-1, ¶ 26).

62. On November 20, 2023, Lieutenant Jordon Slayden sent a memorandum to Deputy Warden Culclager informing Deputy Warden Culclager that, during the shake down of the MSU, his crew determined that Mr. Holt's cell was a fire hazard because of papers stacked as tall as the cell and blocking his window and bed area (Dkt. No. 35-2, Ex. A-1). Lieutenant Slayden states that Mr. Holt had other inmates' legal work in his property and that he found these items "were passed in a way that is against" the ADC's trafficking and trading policies (Dkt. No. 35-2, Ex. A-1).

63. As a result of the MSU shake down, Mr. Holt received a minor disciplinary (Dkt. No. 35-2, Ex. A-1).

## III. Analysis

### A. Mootness

Defendants argue that Mr. Holt's motion should be denied because they contend that it is moot. Deputy Warden Culclager testified that ADC staff stopped sorting the seized materials at the latest on November 17, 2023. Further, Deputy Warden Culclager also testified that Mr. Holt was allowed on November 17, 2023, and in the days following to spend time going through the seized materials that were not deemed to belong to other inmates to get what Mr. Holt needed from the seized materials for his own ongoing active cases including any alleged attorney-client privileged material or work product. Deputy Warden Culclager testified that Mr. Holt would be allowed to continue going through the seized materials not belonging to other inmates to sort out what Mr. Holt needs for his own ongoing active cases.

Mr. Holt counters that the ADC has voluntarily ceased reading only the papers that "they unilaterally deemed to relate to Mr. Holt's active cases." (Dkt. No. 46, at 3). Further, Mr. Holt argues that, at the very least, this makes his situation capable of repetition yet evading review.

An action meets the capable-of-repetition-yet-evading-review exception when: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007).

At the hearing, defendants' witnesses testified to ongoing issues that could lead to a future shake down of Mr. Holt's cell and further confiscation of Mr. Holt's property. Major Mahoney testified that he advised his lieutenant to tell Mr. Holt that ADC officers will take major disciplinary action if they continue to have to clean Mr. Holt's cell. Deputy Warden Culclager testified that Mr. Holt's cell was not in compliance with the Inmate Property Control Policy on the day of the hearing because Mr. Holt had not placed everything in his cell in one property box. Further, Mr. Holt contends that, because he is not currently in control of his privileged and work-product protected materials, the current controversy remains active and is not moot (*Id.*, at 4-5).

Because defendants continue to have access to the seized materials, including but not limited to Mr. Holt's property which defendants deem related to other inmates' and inactive cases, and because Mr. Holt continues to have property in his cell that defendants consider to be subject to seizure and sorting under the current MSU and ADC property policies, the Court determines that Mr. Holt's motion for temporary restraining order or, in the alternative, preliminary injunction, is not moot.

**B. Legal Standard For Granting A Temporary Restraining Order**

When determining whether to grant a motion for a temporary restraining order, this Court considers: (1) the likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm to the movant and the injury that granting an injunction

would cause other interested parties; and (4) the public interest. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Dataphase Sys. Inc. v. CL Sys.*, 640 F.2d 109, 114 (8th Cir. 1981)). Preliminary injunctive relief is an extraordinary remedy, and the party seeking such relief bears the burden of establishing the four *Dataphase* factors. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). The focus is on "whether the balance of the equities so favors the movant that justice requires the court to intervene to preserve the *status quo* until the merits are determined." *Id.*

**C. Likelihood Of Success On The Merits**

Mr. Holt's brief does not discuss his likelihood of success on the merits in terms of the claims in the operative complaint. Rather Mr. Holt contends that he is likely to succeed on the merits *of the requested relief* because confidential communications between an attorney and a client are privileged and not subject to disclosure without consent of the client (Dkt. No. 30, at 6-7). Defendants respond that they are likely to succeed on the merits of the litigation because the Inmate Property Control Policy is reasonably related to the legitimate penological interest of maintaining safety and sanitation (Dkt. No. 36, at 9-10 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Mr. Holt asserts in his reply brief and at the hearing that prison officials trespassed on the protections of the work product privilege by reading draft legal materials Mr. Holt prepared *pro se* (*Id.*, at 7). Mr. Holt is clear, however, that his motion for a temporary restraining order is "*narrowly targeted*" to seek relief only as to "the records of Mr. Holt's Legal Material related to his active *personal* cases." (Dkt. No. 46, at 2) (emphasis added).

"In considering the likelihood of the movant prevailing on the merits, a court does not decide whether the movant will ultimately win." *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007) (citing *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367,

371 (8th Cir. 1991)). Rather, the Eighth Circuit has instructed district courts to "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987)). Still, "an injunction cannot issue if there is no chance of success on the merits." *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005); *see also Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1033 (N.D. Iowa 2008) ("Likelihood of success on the merits requires that the movant find support for its position in governing law.").

In his reply brief and during argument at the hearing, Mr. Holt asserts that ADC officials read the seized materials related to his active cases and did not merely sort them as suggested by defendants. Further, Mr. Holt argues that ADC officials misclassified certain seized materials as contraband that were actually privileged materials and work product simply because the materials had another inmate's name on them. According to Mr. Holt, some of these materials were legal research or work product related to his own ongoing litigation. Mr. Holt contends that all his handwritten notes and drafts – whether on behalf of himself or others – constitute protected work product (Dkt. No. 46, at 9). Mr. Holt also argues that ADC staff sorting the seized materials could not have known what materials are part of his ongoing case files because at the time of the sorting defendants were unaware of his active litigation (*Id.*, at 8 n.5). Mr. Holt acknowledges that defendants have given him access to some of the seized materials. Mr. Holt maintains, however, that defendants have not given him access to any of the documents that ADC staff determined during the sorting process to be the property of other inmates.

Mr. Holt is proceeding in this lawsuit on claims that the ADC Policy violated his constitutional rights to assist other prisoners in litigation and his First Amendment rights of free speech and association. Because the Court understands Mr. Holt's motion for a temporary restraining to seek relief only as to the records of Mr. Holt's seized material related to his own active personal cases, Mr. Holt's likelihood of success on the merits appears to the Court to relate only to a claim that the ADC's Policy violated his right to access the courts to bring claims on his own behalf. At present, and based on the Court's understanding of Mr. Holt's operative complaint, this claim does not exist in this lawsuit. The Court dismissed this claim when it adopted in part the Recommendation of Judge Volpe and dismissed without prejudice Mr. Holt's claim that the Policy violated his personal right of access to the courts to bring claims on his own behalf (Dkt. No. 17, at 12). Mr. Holt has not moved to amend his operative complaint to bring an access to the courts claim on his own behalf back into the lawsuit. The claims that remain in this lawsuit at this stage in the litigation are Mr. Holt's jailhouse lawyer claims, his First Amendment free speech and association claims, as well as his state law claims (Dkt. No. 17, at 13). Mr. Holt has not established a likelihood of success on the merits of any of these claims and has expressly stated his intention not to seek any relief related to his representation of other inmates in his motion for temporary restraining order (*see* Dkt. No. 46, at 2).

At this stage in the litigation and on the limited record before it, the Court determines that Mr. Holt has not established a likelihood of success on the merits.

### D. Remaining *Dataphase* Factors

Having concluded that Mr. Holt has not established a likelihood of success of the merits on the limited record before it at this stage, the Court declines to address the remaining *Dataphase* factors. *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 737 (8th

Cir. 2008) (finding that because the moving party had not produced sufficient evidence to establish that it was likely to prevail on the merits of its claim, it was unnecessary to address remaining *Dataphase* factors).

**IV. Conclusion**

The Court determines that Mr. Holt has not met his burden at this stage of the litigation and on the limited record before it to obtain a temporary restraining order against defendants and denies Mr. Holt's application for a temporary restraining order (Dkt. No. 29).

Mr. Holt's motion for preliminary injunction remains before the Court (Dkt. No. 29). The Court orders all counsel in this matter to remind their clients of their obligations to institute a litigation hold. "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003); *see Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004); *E*Trade Securities, LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 587 (D. Minn. 2005). In this case, the Court emphasizes that the meaning of relevant documents as used in reference to the litigation hold includes, but is not limited to, all of the seized material from Mr. Holt's cell in the form in which the seized materials existed at the time this litigation was filed or reasonably anticipated, and certainly at least at the time of the December 1, 2023, hearing, whether the seized materials were presented to the Court during the hearing or remained at the MSU of the ADC. The Court instructs counsel and the parties to consider broadly documents and information that may be relevant. Further the Court reminds counsel and the parties that, under the doctrine of spoliation, parties have a duty to preserve, including but not limited to a duty not to destroy, evidence when litigation is filed or becomes reasonably anticipated. *See Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875 (8th Cir.

2015) (examining application of the spoliation of evidence doctrine). The Court reminds the parties of these obligations.

It is so ordered this Friday, December 15, 2023, at 5:00 p.m. CST.

Kristine G. Baker
Kristine G. Baker
United States District Judge